# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>STATE OF MONTANA,<br><br>    Plaintiffs,<br><br>    v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; MELANIE FONTES RAINER, in her official capacity as Director of the Office for Civil Rights; CENTERS FOR MEDICARE & MEDICAID SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendants. | Case No. 6:24-cv-211-JDK |

## DEFENDANTS' MOTION TO RECONSIDER GRANT OF MOTION FOR STAY OF AGENCY ACTION (ECF NO. 18)

Defendants respectfully request that the Court reconsider the scope of its July 3, 2024 Memorandum Opinion and Order ("Order"), ECF No. 18, in which it stayed "the effective date of all portions" of a U.S. Department of Health and Human Services ("HHS") Final Rule ("the Rule") that implements the nondiscrimination provisions of § 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116.  Order at 27.[1]  More specifically, Defendants request that the Court revise its Order to stay only those "portions of the Rule" that Plaintiffs "*actually challenge[d]*" in their motion for preliminary relief. *Career Colleges & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024); *see* Mot. for TRO, Prelim. Inj., and Stay of Agency Action ("Motion"), ECF No. 2.

In their Motion, Plaintiffs Texas and Montana challenged only a single facet of the Rule—namely, the Rule's explanation that, in light of the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), § 1557's prohibition against sex discrimination necessarily encompasses

---

[1] *See* Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37,522 (May 6, 2024).

1

discrimination on the basis of gender identity, *see, e.g.*, 45 C.F.R. § 92.101(a)(2)(iv). Even then, Plaintiffs claimed that they would be irreparably harmed by the Rule's prohibition on gender identity discrimination only to the extent that such a prohibition would purportedly "compel" them to "perform" or "pay for" certain gender-affirming care. Motion at 1. To state the inverse of Plaintiffs' position, then, they *did not* challenge any of the various provisions in the Rule that say nothing whatsoever about gender identity discrimination. And even as to the provisions that do address gender identity discrimination, Plaintiffs *did not* challenge those provisions to the extent that they concern matters unrelated to the provision of or coverage for gender-affirming care.

Because substantial parts of the Rule went wholly unchallenged by Plaintiffs, it was "improper" for the Court to stay the Rule in its entirety. *Career Colleges*, 98 F.4th at 255-56. Accordingly, Defendants request that the Court revise its Order to stay only those portions of the Rule that specifically implicate the provision of or coverage for gender-affirming care—i.e., 45 C.F.R. §§ 92.206(b)(4), 92.207(b)(4)-(5). Such a stay would adequately "prevent" the particular "irreparable injur[ies]" Plaintiffs asserted in their Motion. 5 U.S.C. § 705.[2] At most, the Court should stay only those relevant portions of the Rule that address discrimination on the basis of gender identity and leave the remainder of the Rule's multifaceted (and unchallenged) nondiscrimination protections intact.[3]

---

[2] This narrower proposed stay is reflected in the Proposed Order filed contemporaneously with this Motion.

[3] The relevant provisions of the Rule that address discrimination on the basis of gender identity are: 42 C.F.R. §§ 438.3(d)(4), 438.206(c)(2), 440.262, 460.98(b)(3), 460.112(a); 45 C.F.R. §§ 92.101(a)(2)(iv), 92.206(b)(1)-(4), 92.207(b)(3)-(5). And these provisions should be stayed only to the extent they address gender identity discrimination specifically. *See, e.g.*, 42 C.F.R. § 438.3(d)(4) (precluding Medicaid programs and their managed care plans from discriminating against individuals "eligible to enroll on the basis of race; color; national origin; disability; or sex"). Other provisions of the Rule that concern health insurance exchanges and "Qualified Health Plans" under the ACA also address gender identity discrimination. *See* 45 C.F.R. §§ 147.104(e), 155.120(c)(1)(ii), 155.220(j)(2)(i), 156.200(e), 156.1230(b)(2). But because Plaintiffs do not even mention these latter provisions in their Motion or their Complaint—let alone explain how they are imminently and irreparably harmed by them—such provisions should not be included in a stay order properly limited to only those portions of the Rule that Plaintiffs actually challenge.

2

## LEGAL STANDARD

"A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances." *Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-cv-792, 2019 WL 3933614, at *2 (E.D. Tex. Aug. 20, 2019). The latter two Rules "apply only to final judgments." *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 564 (E.D. La. 2013). Rule 54(b), in contrast, "allows parties to seek reconsideration of interlocutory orders" and authorizes a district court to "'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (quoting Fed. R. Civ. P. 54(b)); *see Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 813-14 (D.C. Cir. 2024). An order granting preliminary relief constitutes an interlocutory order. *See Jiao v. Xu*, 28 F.4th 591, 596 (5th Cir. 2022); *see also Alliance for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, at *3 n.3 (5th Cir. Apr. 12, 2023) (agreeing that a stay under 5 U.S.C. § 705 is an appealable interlocutory order). A motion to reconsider such an order "is thus governed by . . . Rule 54(b)." *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-cv-147, 2021 WL 5003273, at *3 (E.D. Tex. Oct. 28, 2021) (applying Rule 54(b) to a motion to reconsider the court's grant of a preliminary injunction); *see Domain Prot.*, 2019 WL 3933614, at *1-2 (same). And under Rule 54(b)'s "flexible standard," *Providence Title*, 2021 WL 5003273, at *3, a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law," *Austin*, 864 F.3d at 336 (citation omitted).

## ARGUMENT

Plaintiffs sought preliminary relief solely on the basis that the Rule, according to them, unlawfully "reinterprets" § 1557's "prohibition of discrimination 'on the basis of sex' to include discrimination on the basis of 'gender identity'" and thus, Plaintiffs claim, "codif[ies] a legal duty" to perform and provide insurance coverage for certain "'gender-affirming' medical activities" in violation of Texas and Montana law. Motion at 1-2, 6. Yet the Court's Order stayed the Rule *in its entirety*, despite Plaintiffs having challenged only a single facet of the Rule in their Motion, and notwithstanding the fact that most of the Rule has nothing to do with gender-affirming care or gender identity

3

discrimination more broadly. Such sweeping relief was unwarranted. *See Career Colleges*, 98 F.4th at 255-56 ("[T]hat it would be improper to enjoin portions of the Rule that are unchallenged . . . is correct."); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017) (concluding that a district court erred in entering an injunction that "exceed[ed] the scope of the parties' presentation" and "the scope of the [plaintiff's] harm"); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., joined by Thomas, J., and Alito, J., concurring in the grant of stay) (explaining that a district court erred by issuing a "sweeping" universal injunction against a state law in its entirety "even though . . . the plaintiffs had failed to 'engage' with other provisions of" the law in question that did not "presently affect them"). The Court should correct its error by narrowing its Order to stay only those portions of the Rule that Plaintiffs actually challenged in their Motion—namely, those portions concerning the provision of or coverage for gender-affirming care specifically—or, at most, only those relevant portions that address gender identity discrimination, *see supra* n.3.[4]

In granting relief under 5 U.S.C. § 705, the Court was obligated to "postpone the effective date of" the Rule only to the "extent necessary to prevent" the "irreparable injur[ies]" it found that Plaintiffs had established in their Motion, *id.* The Court's Order—which stayed the *entire* Rule—exceeded this statutory command. Indeed, in *Career Colleges & Schools of Texas v. U.S. Department of Education*, 98 F.4th 220 (5th Cir. 2024), the Fifth Circuit made clear that relief awarded under § 705 "should only involve postponing the effective date of the portions of the Rule" that a plaintiff "*actually challenges* and for which it has shown a likelihood of success on the merits." 98 F.4th at 255; *see id.* at 256 (ordering the district court to postpone the effective date of only a few challenged provisions of a federal regulation). A § 705 stay is therefore "improper" if it "enjoin[s] portions of [a] Rule that are unchallenged or for which [the plaintiff] has not shown a likelihood of success on the merits." *Id.* at 255-56; *see Ams. for Beneficiary Choice v. U.S. Dep't of Health & Human Servs.*, No. 4:24-cv-439, 2024 WL

---

[4] Defendants do not believe that Plaintiffs were entitled to any preliminary relief at all for the reasons explained in Defendants' prior briefing. *See* Defs.' Opp'n to Pls.' Mot. for TRO, Prelim. Inj., and Stay of Agency Action ("Opposition") at 8-24, ECF No. 15. Defendants recognize, however, that the Court has rejected those arguments and will thus refrain from reiterating them here. This motion asks the Court to reconsider only the substantive scope of the relief it granted.

4

3297527, at *6 (N.D. Tex. July 3, 2024) (describing a § 705 stay as an "extraordinary measure" and declining to stay a challenged provision of a final rule because the plaintiff failed to demonstrate "a substantial likelihood of success" on the merits). And this standard makes sense, given that § 705 provides for paradigmatic equitable relief, *see* 5 U.S.C. § 705 (authorizing temporary relief only "to the extent necessary to prevent irreparable injury" and "to preserve status or rights pending conclusion of the review proceedings"), and well settled principles of equity jurisprudence require that "a plaintiff's remedy . . . be 'limited to the inadequacy that produced [his] injury in fact,'" *Gill v. Whitford*, 585 U.S. 48, 66 (2018), and that any court-ordered relief "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). *See also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) ("When Congress empowers courts to grant equitable relief [via statute], there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity.").

In seeking preliminary relief here, Plaintiffs only challenged the lawfulness of the Rule's explanation that § 1557's prohibition against sex discrimination encompasses discrimination on the basis of gender identity. *See* Motion at 1 (contending that HHS was not lawfully permitted to "reinterpret[] Title IX's prohibition of discrimination 'on the basis of sex,'" as incorporated by § 1557, "to include discrimination on the basis of 'gender identity'"). Consequently, they did not challenge—and the Court accordingly should not have stayed—the various provisions and portions of the Rule that do not concern gender identity discrimination at all. *See, e.g.*, 45 C.F.R. § 92.11 (notice of availability of language assistance services and auxiliary aids and services); *id.* § 92.201 (meaningful access to health programs and activities for individuals with limited English proficiency); *id.* § 92.202 (effective communication for individuals with disabilities); *id.* § 92.203 (accessibility to buildings and facilities for individuals with disabilities); *see also id.* § 92.101(a)(1) (prohibiting discrimination in covered health programs and activities "on the basis of race, color, national origin, sex, age, disability, or any combination thereof"). And even as to the Rule's prohibition against gender identity discrimination, Plaintiffs only challenged that prohibition to the extent it would allegedly require them

5

to "perform and pay for harmful 'gender-transition' procedures." Motion at 1.[5] They therefore did not challenge—and the Court likewise should not have stayed—that prohibition to the extent it addresses gender identity discrimination unrelated to the provision of gender-affirming care specifically (e.g., by prohibiting the denial of other types of medical care, such as a physical or chemotherapy, to a patient merely because that patient is transgender).[6]

That the Court's Order is unwarrantedly broad is further confirmed by the much narrower substantive relief granted by other courts in cases involving near-identical challenges to the Rule. For instance, after concluding, among other things, that another group of plaintiffs was likely to succeed on their claim that the Rule unlawfully interprets § 1557's prohibition against sex discrimination to

---

[5] *See also, e.g.*, Motion at 6 (contending that the Rule "attempts to codify a legal duty to perform 'gender-affirming' medical activities as a condition of receiving federal funds"); *id.* at 4 (claiming that Texas "faces losing billions . . . in federal healthcare dollars" because state laws barring the provision of and coverage for certain gender-affirming care would qualify as discriminatory under the Rule); *id.* at 5 (claiming that, under the Rule, "Montana healthcare providers must violate [a] state law" barring the provision of or coverage for gender-affirming care for minors "to retain federal funding"); *id.* at 13 ("Whether and when to permit 'gender-transition' medical activities is an issue of vast policy and political significance."); *id.* at 14 ("Plaintiff States could not have known that Defendants would claim a new condition . . . that would require them to provide 'gender-affirming' treatments in violation of state law"); Reply in Support of Pls.' Mot. for TRO, Prelim. Inj., and Stay of Agency Action ("Reply") at 1, ECF No. 17 (claiming that the Rule "will require all States and healthcare providers to perform gender-transition procedures on pain of losing federal funding"); *id.* at 6 ("Setting aside the threat of massive financial penalties, [the Rule] . . . requires Plaintiff States to disregard their own laws that ban so-called gender-transition procedures.").

[6] The Rule prohibits all forms of gender identity discrimination in covered health programs and activities, even when wholly unrelated to the provision of gender-affirming care. *See, e.g.*, 45 C.F.R. § 92.206(b)(1) (providing in relevant part that a covered entity may not "[d]eny or limit *health services* . . . to an individual based upon the individual's . . . gender identity" (emphasis added)); *id.* § 92.207(b)(3) (prohibiting insurance issuers from "[d]eny[ing] or limit[ing] coverage" or "coverage of a claim" to an individual "based upon the individual's . . . gender identity"). A corollary of Plaintiffs' objection to the Rule's prohibition on gender identity discrimination is that health care providers and insurance issuers should be allowed to deny the provision of or coverage for all medical care—including, for example, a standard physical, a breast cancer screening, an appendectomy, or chemotherapy—simply because a patient is transgender. *See* Opposition at 7 n.9. Plaintiffs tried to dodge this unsettling reality in their Reply. *See* Reply at 1 (claiming that Defendants' description of the Rule "as a backstop to ensure everyone has access to" general medical treatment "is an egregious mischaracterization of the Final Rule's mandates"). Plaintiffs gave no indication in their Motion or Reply, however, that they wish to discriminate against transgender patients outside of the gender-affirming care context, meaning that the Rule's prohibition against such animus went unchallenged. Yet by staying the Rule in its entirety, the Court's Order has rendered such animus toward transgender patients permissible for the time being.

6

include gender identity discrimination, a district court in Florida stayed only a small subset of the Rule's provisions in that state, all of which dealt with gender identity discrimination to some extent. *See* Order, *Florida v. U.S. Dep't of Health & Human Servs.*, No. 8:24-cv-1080 (M.D. Fla. July 3, 2024), ECF No. 41.[7]  And after another district court in the Fifth Circuit likewise concluded that HHS's treatment of gender identity discrimination likely exceeded the agency's statutory authority, it too stayed only certain provisions of the Rule, and only "in so far as [those provisions] are intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity." *Tennessee v. Becerra*, -- F. Supp. 3d --, 2024 WL 3283887, at *10, 12 (S.D. Miss. July 3, 2024).  As with this case, Defendants respectfully disagree with those courts' conclusions that preliminary relief was warranted.  And Defendants do not mean to suggest that the other courts' stay orders are necessarily "correct" or adequately tailored.  But the limited substantive scope of their orders nonetheless demonstrates that the Court's stay of the entire Rule in this case is a clear outlier in comparison.

The Court suggested in its Order that a stay of the entire Rule was warranted because Defendants "provide[d] no guidance on how the Court should excise" what it described as the "offending provisions" of the Rule.  Order at 27.  In their Opposition, Defendants explained at the beginning of their "Argument" section (1) that, as a general matter, it would be "improper" for the Court "to enjoin portions of the Rule" that Plaintiffs did not challenge in their Motion; (2) that Plaintiffs' Motion, "even if broadly construed, implicate[d] only those provisions or facets of the Rule that concern discrimination on the basis of gender identity"; and (3) that the Court's "analysis and any potential relief should therefore be limited only to those specific provisions."  Opposition at 7-8.  Defendants further explained that "even as to the Rule's prohibition on gender identity discrimination, Plaintiffs appear to challenge the Rule only to the extent it would purportedly 'compel'" them "'to perform and pay for' gender-transition procedures." *Id.* at 7.  Defendants later reiterated that "any relief should be limited to the parts of the Rule that Plaintiffs '*actually challenge*[].'" *Id.* at 25 (quoting

---

[7] For the Court's convenience, an excerpted version of the Florida district court's Order is attached as Exhibit 1.  *See* E.D. Tex. Local Rule CV-7(b) ("Only relevant, cited-to excerpts of attached materials should be attached to the motion or the response.").

7

*Career Colleges*, 98 F.4th at 255). And Defendants also underscored that the Rule expressly provides that "[a]ny provision . . . held to be invalid or unenforceable by its terms, or as applied to any person or circumstance, shall be severable . . . and shall not affect the remainder" of the Rule, 45 C.F.R. § 92.2(c). *See* Opposition at 25 (citing the Rule's severability provision); *see also Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023) ("[R]egulations—like statutes—are presumptively severable: If parts of a regulation are invalid and other parts are not, we set aside only the invalid parts . . . .").

Defendants thus argued that the scope of any preliminary relief issued by the Court should be limited to the portions of the Rule that were actually challenged in Plaintiffs' Motion, and Defendants made that argument with as much clarity as Plaintiffs' briefing permitted. Indeed, any difficulty in determining which portions of the Rule to "excise," Order at 27, is largely attributable to Plaintiffs' failure to identify in their Motion the specific provisions they claimed were both unlawful and would cause them irreparable harm. *Compare* Motion at 1, 6 (arguing generally that the Rule unlawfully interprets sex discrimination to include gender identity discrimination and "codif[ies] a legal duty to perform 'gender-affirming' medical activities" without citing to any specific provisions of the Rule), *and* Proposed Order, ECF No. 2-3 (requesting that the Court postpone the effective date of "the Final Rule[]"), *with Tennessee*, 2024 WL 3283887, at *12 (listing the specific provisions "for which Plaintiffs s[ought] a stay" and staying only those provisions). And it is unclear how Defendants—who argued that *none* of the Rule's provisions are unlawful—could have done more to discern from Plaintiffs' imprecise arguments the portions of the Rule that were properly subject to a potential stay. *Cf. Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (noting that preliminary relief "is an extraordinary and drastic remedy which should not be granted unless *the movant* clearly carries the burden of persuasion" (emphasis added)). In any event, Defendants appreciate that the Court desires additional guidance as to how to tailor the substantive scope of its relief to the provisions of the Rule actually challenged here, *see* Order at 27, and Defendants seek to provide such guidance herein.

In sum, any stay granted under 5 U.S.C. § 705 must necessarily be limited to "the portions of the Rule" that Plaintiffs "*actually challenge[d]*," *Career Colleges*, 98 F.4th at 255, and the Court should

8

revise its sweeping Order to reflect that limitation. Plaintiffs made clear in their Motion and Reply that they sought preliminary relief solely on the basis that the Rule would allegedly compel them to provide and pay for certain gender-affirming care. *See* Motion at 1. Consequently, far from having to "rewrite" the Rule, Order at 27, the Court need only stay those portions that specifically concern the provision of or coverage for gender-affirming care—i.e., 45 C.F.R. §§ 92.206(b)(4), 92.207(b)(4)-(5)—leaving everything else intact. At most, the Court should stay only those relevant portions of the Rule that address discrimination on the basis of gender identity, *see supra* n.3. Other district courts addressing challenges to the Rule have crafted much narrower substantive relief. *See, e.g.*, *Tennessee*, 2024 WL 3283887, at *12. This Court should follow suit.

## CONCLUSION

Based on the foregoing, the Court should reconsider the scope of its Order and stay only those portions of the Rule that specifically implicate the provision of or coverage for gender-affirming care, which are the only portions that Plaintiffs "*actually challenge[d]*" in their Motion. *Career Colleges*, 98 F.4th at 255.

DATED: July 22, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD
(IN Bar No. 37147-49)
Trial Attorney
BRADLEY P. HUMPHREYS
Senior Trial Counsel
LISA ZEIDNER MARCUS
Senior Counsel
LIAM C. HOLLAND
JEREMY S.B. NEWMAN
SARAH M. SUWANDA
Trial Attorneys

          U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 616-8467
Fax: (202) 616-8470
Email:  zachary.w.sherwood@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i)(8), the Local Rules' "meet and confer" and "certificate of conference" requirements are not applicable to this Motion for Reconsideration.

*/s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD

**CERTIFICATE OF SERVICE**

On July 22, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD
