# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>STATE OF MONTANA,<br>*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; MELANIE FONTES RAINER, in her official capacity as Director of the Office for Civil Rights; CENTERS FOR MEDICARE & MEDICAID SERVICES; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>*Defendants*. | Case No. 6:24-cv-211-JDK |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER GRANT OF MOTION FOR STAY OF AGENCY ACTION

Not content with previous rulings, the Department of Health and Human Services ("HHS") has attempted, on multiple occasions, to expand the phrase "on the basis of sex" to include gender identity, only for a federal court to deem the regulation as being in excess of HHS's statutory authority under the Affordable Care Act ("ACA"). Dkt. 18 at 1–4 (summarizing regulatory history). On July 3, 2024, this Court added another mark to the tally. It found that HHS's new Final Rule, which once again redefined "on the basis of sex," likely violated the Administrative Procedure Act by imposing "sweeping new social policy" onto Plaintiff States contrary to the ACA and the statues the ACA incorporates by reference. Dkt. 18 at 1. This Court therefore granted Plaintiffs States' motion for preliminary relief and stayed the effective date "of

1

all portions of" the Final Rule "as to Texas and Montana and all covered entities in those States." *Id.* at 27.

Defendants now seek reconsideration. They urge this Court to narrow the preliminary injunction to just the provisions of the Final Rule on gender-affirming care or, at most, gender identity discrimination. But this request misrepresents Plaintiff States' broader challenge to the Final Rule's wholesale redefinition of "[d]iscrimination on the basis of sex," Dkt. 1 ¶ 60 (quoting 89 Fed. Reg. at 37699), which "permeate[s] the Final Rule." Dkt. 18 at 27. Indeed, the injury to Plaintiff States extends far beyond the provisions cited by Defendants. In addition, Defendants have not fixed any of the flaws in their initial arguments for severability. Even now, Defendants fail to grapple with the severability analysis—leaving this Court to speculate on the practical implications of a partial stay. This perfunctory approach falls far short of meeting their burden. For the reasons below, Defendants' motion should be denied.

## STANDARD

Although Rule 54(b) gives courts discretion over whether reconsideration is appropriate, courts must exercise this discretion "sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delay." *Poincon v. Offshore Marine Contractors, Inc.*, No. CV 18-10251, 2020 WL 6822535, at *2 (E.D. La. Nov. 20, 2020). In this instance, Defendants ask this Court to rescind the order it issued on July 3, 2024, which stayed the effective date for the Final Rule in its entirety, and instead sever portions of the Final Rule plaintiffs so that unchallenged provisions go into effect. To utilize severability, Defendants must first establish two conditions. *First*, Defendants must show that "the agency would have adopted the same disposition regarding the unchallenged portion [of the regulation] if the challenged portion were subtracted." *Sierra Club v. FERC*, 867 F.3d 1357, 1366 (D.C. Cir. 2017). *Second*, Defendants must show that the remaining

parts of the regulation "function sensibly without the stricken provision." *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 351 (D.C. Cir. 2019). Defendants raised the issue of severability in their motion in opposition to preliminary relief. This Court specifically concluded in its Order that Defendants failed to meet their burden.

## ARGUMENT

This Court should refrain from revising its order postponing the effective date of Final Rule challenged in this litigation. As Plaintiff States explained in their previous briefing, Plaintiff States seek a stay of the Final Rule under § 705, which provides that a "reviewing court" may "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."[1] "[T]he scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party restricted and allows a court to 'set aside' an unlawful agency action," *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), up to and including "the whole . . . of an agency rule."[2] 5 U.S.C. § 551(13) (emphasis added).

Defendants urge this Court to salvage some of the Final Rule with severability, *see* Dkt. 15 at 25; Dkt. 21, but their initial briefing only made a passing reference to a severability clause and engaged in none of the analysis necessary to establish that a partial stay would be proper. Despite having a second bite of the apple, Defendants still fail to show their severability argument has any

---

[1] From the beginning Plaintiffs have sought a stay which directs Defendants to postpone the *effective date* of the Final Rule. *See* Dkt. 1 at 36 (a); Dkt. 2 at 1, 15 (asking this Court to "postpone the Final Rule's effective date"). Indeed, the entire Final Rule only has one "effective date."

[2] Also, while Defendants repeatedly cite to *Career Colleges and Schools of Texas v. U.S. Dep't. of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), Dkt. 21 at 1–4, 8–9, that case, unlike *Murrill*, 2024 WL 3452887, says nothing of severability or a Defendant's waiver of that argument.

3

teeth. They omit any discussion about whether HHS would have promulgated the Final Rule absent the challenged provisions, and they make only a token effort at explaining how a partial stay would work. This failure is particularly striking given that this Court did Defendants the service of identifying many of the provisions in the Final Rule affected by HHS's misinterpretation and overreach. Dkt. 18 at 27.

Defendants, in short, have failed to meet their burden on severability during preliminary injunction briefing, and they fail to meet that burden now. Because Defendants have waived their severability argument twice-over, this Court should end its analysis there and rule against Defendants.

I. **Defendants' repeated failure to adequately argue severability waives the argument; this court should again decline to engage in the analysis for them.**

Defendants have waived their severability argument. In their twenty-five-page opposition to Plaintiffs' preliminary injunction, Defendants spent all of three sentences arguing the "provisions of the Rule are severable." Dkt. 15 at 25. As this Court has already found, this falls short of Defendants burden in showing a challenged Rule is severable. *See* Dkt. 18 at 27 ("While HHS cites the severability clause in the Final rule, § 92.2(c), it provides no guidance on how the Court should excise the offending provisions."). And the Fifth Circuit recently reaffirmed that such a cursory reference to severability forfeits that argument.[3] *See Louisiana by and through Murrill v. U.S. Dep't. of Educ.*, 2024 WL 3452887, at *1 (5th Cir. July 17, 2024) (holding the Department of Education "forfeit[ed]" the argument that any interim relief should be limited

---

[3] *See also Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) (concluding an agency that made a "cursory" request that preliminary relief be "narrowly tailored" "waived any argument about the scope of the [relief]").

because its brief stated only, "in two conclusory sentences that the Rule's severability provision should enable the rest of the Rule to escape the preliminary injunction").

Beyond that, a Rule 54(b) motion for reconsideration is no place to re-urge arguments; or to try to expand on arguments that were inadequately briefed. To be sure, "[u]nder Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). But "[t]he discretion to modify an interlocutory order does not eliminate 'the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time.'" *United States v. Mouton*, 2024 WL 1545178, at *1 (S.D. Tex. Apr. 8, 2024) (citation omitted); *see also Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019).

However, even if Defendants' severability argument were not waived—and even if this rehashed argument is properly brought in a motion for reconsideration—Defendants have still failed to meet their burden of establishing that severability is appropriate. *see Tex. v. United States (DACA)*, 691 F. Supp. 3d 763, 788 (S.D. Tex. 2023) (articulating severability test). Even now, Defendants' pen spills little ink in telling this Court how it should—or even could—craft workable relief based on the portions of the Final Rule Defendants claim are severable. *See generally* Dkt. 21. Rather, Defendants spend the bulk of their briefing arguing that only the portions of the Final Rule plaintiffs "actually challenged" should be stayed, but this assertion not only relies on a mischaracterization of Plaintiff States' claims, it also glosses over this Court's observation that the deficiencies in the Final Rule, which cause Plaintiff States' injuries, "permeate the Final Rule."

Dkt. 18 at 27.

Defendants premise their motion on the assumption that Plaintiff States only challenged the Final Rule to the extent that it would require Plaintiff States to perform and subsidize harmful gender-transition procedures. *See* Dkt. 21 at 6. Although Plaintiff States certainly highlight this aspect of the Final Rule, Plaintiff States make clear in their prior briefing that Plaintiff States protest the Final Rule's redefinition of "[d]iscrimination on the basis of sex" generally, *see*, *e.g.*, Dkt. 1 ¶¶ 60, 94–97, as well as any regulation therein that incorporated or relied on this reimagination of the statutory text. *See*, *e.g.*, *Id.* ¶¶ 80–83, 125–128 (challenging provisions related to pregnancy and abortion). The provisions that compel Plaintiff States to perform and subsidize gender transitions simply represent among the most egregious applications of the expanded definition since they undermine Plaintiff States' sovereignty and imperil public safety by facilitating unnecessary and life-altering surgeries on patients, including minors, who cannot consent to the procedures.

For Plaintiff States to obtain full relief and avoid irreparable injury, this Court, at minimum, would need to stay the effective date (and later vacate) all provisions implicated by the reinterpretation of "[d]iscrimination on the basis of sex." Yet, in their Motion for Reconsideration and their Proposed Order, Defendants only identify a handful of provisions that deal with gender transitions. This is insufficient. Even assuming that Defendants engaged in the proper analysis with respect to 45 C.F.R. §§ 92.206(b)(4), 92.207(b)(4)-(5)[4], § 705 authorizes this Court to stay as

---

[4] Defendants did not meet their burden even with respect to the provisions they identify in their proposed order. Neither their motion nor their previous briefing, for example, established that HHS would have initiated rulemaking, much less promulgated the remaining regulations in the Final Rule, but for its persistent objective to read gender identity into Section 1557.

6

much of the Final Rule as is necessary and appropriate to prevent Plaintiff States from suffering irreparable injury. Defendants therefore had the burden of establishing (1) that the Final Rule would "function sensibly" and (2) that HHS "would have adopted the same disposition," even if all regulations incorporating or relying on the HHS's misinterpretation were stricken.[5] *DACA*, 691 F. Supp. 3d at 788. They established neither.

Hence, even if this Court wanted to engage in a severability analysis, Defendants' scant briefing on the issue puts the Court in the "untenable position" of having to "parse the [181] page Final Rule [itself] to determine the practicability and consequences of a limited stay." *Murrill* 2024 WL 3452887, at *2. That is not this Court's job. *See Murthy v. Mo.*, 2024 WL 3165801, at *12 n.7 (U.S. June 26, 2024) ("[J]udges are not like pigs, hunting for truffles buried [in the record].") (citation omitted, alterations in original). This is especially true at the preliminary injunction stage, where this court has the discretion to craft a "temporary order [that is] broader than final relief" so that it may consider the intricacies of the parties' claims and defenses without risking irreparable injury. *Murrill* 2024 WL 3452887, at *2 (citation omitted). Defendants' lack of briefing on this issue essentially calls this Court to engage in an unled, roving severability analysis of the Final Rule. But this Court has already—rightfully—declined Defendant's invitation for it to do the heavy lifting on this point. Dkt. 18 at 27. It should do so again here.

---

[5] There is "substantial doubt" that the agency would have adopted an emasculated form of the Final Rule. *Balt. v. Azar*, 439 F. Supp. 3d 591, 615 (D. Md.), aff'd, 973 F.3d 258 (4th Cir. 2020). The chief purpose of the Final Rule is to "implement § 1557's nondiscrimination protections" "consistent with the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)." Dkt. 15 at 3. Erasing major provisions fatally undermines the rationale for the rule. *See Balt.*, 439 F. Supp. 3d at 615.

7

## II. The equitable factors weigh against Defendants' request that this Court narrow the scope of its order.

Defendants' repeated failure to establish grounds for severability, on its own, is enough to defeat their request for reconsideration. Their motion, however, fails for an additional reason: namely, the equitable factors that govern preliminary relief counsel against amending the Court's previous order. To start with, Defendants cannot show that they will suffer any harm, much less irreparable harm, absent reconsideration of the Court's order. Indeed, it is not clear that Defendants claim any injury as a consequence of the Court's order. Defendants at most imply an interference with their ability to enforce regulations promulgated in the Final Rule. However, the preliminary relief awarded by this Court does not prevent Defendants from enforcing longstanding regulations governing § 1557's nondiscrimination protections; this includes regulations pertaining to sex discrimination. *Murrill*, 2024 WL 3452887, at *3.

To the contrary, all this Court's order will do is prevent Defendants from enforcing the new Final Rule, not-yet effective in Plaintiff States, which exceeds Defendants' statutory authority and otherwise contains edicts that HHS would not have published but for its dogged effort to illegally expand the definition of "on the basis of sex." Regarding the former, Defendants have "no interest in the perpetuation of unlawful agency action." *Tex. v. U.S.*, 40 F.4th 205, 559 (5th Cir. 2021) (quoting *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Regarding the latter, Defendants do not have the same claim to irreparable harm when its bureaucratically issued rule is enjoined as a democratically elected legislative body has when one of its statutes is enjoined. *See Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1144 (5th Cir. 2021) (courts can grant "interim relief" to "preserve the *status quo ante*").

In contrast, a change to this Court's July 3, 2024, order will cause Plaintiff States severe

8

and irrevocable harm because not only would it destroy the status quo, but it also would force Plaintiff States, as well as all covered entities in those States, into compliance after the Final Rule's stated effective date, giving them no time to transition. Plaintiff States accordingly would still be forced to incur unrecoverable compliance costs, such as expending time and resources to understand the redlined Final Rule, revising policies, training employees, and submitting assurances of their compliance. *See Rest. Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597–98 (5th Cir. 2023) (explaining "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm" (*quoting Texas*, 829 F.3d at 433–34)). But Plaintiff States would have no assurance that the final judgment will match the preliminary relief, leaving open the possibility for duplicated expenses. *See Murrill*, 2024 WL 3452887, at *2 (noting that "[t]he implementation and compliance costs would double if the partially implemented Rule differs from a final judgment").

Furthermore, Plaintiff States, as well as the covered entities in those States, would face "great legal indecision" if the Court adheres to Defendants' demands to divine a new regulatory scheme out of the ashes of its ruling. *Id.* As this Court noted, HHS's unlawful interpretation of "on the basis of sex" pervades the Final Rule. Should this Court target just these provisions, Plaintiff States, as well as the covered entities in those States, would be left to simply "guess" at how far their liabilities and responsibilities extend. This could have severe consequences. The Final Rule requires that Plaintiff States to submit certificates of assurance that their health programs or activities are in compliance with Section 1557. *See*, *e.g.*, 89 Fed. Reg. 37696. If Plaintiff States, and the covered entities in those States, do not know their obligations, they may misfile a certificate of assurance at the risk of their federal funds. *See Grove City Coll. v. Bell*, 465 U.S. 555,

574–75 (1984) (upholding defunding for failure to file assurance despite entity's concern that the assurance failed to comport with statute).

Finally, the public interest would not be served by an upset of the status quo via temporary judicial rewriting of the Rule that may be partly or fully undone by a final court judgment. Rather, the interim relief granted by this court preserves the status quo until the end of litigation; thereby, protecting the public: (1) from the perpetuation of unlawful agency action; and (2) the confusion that stems from piecemeal regulations that may be vacated on final judgment. Moreover, allowing Defendants to enforce portions of an unlawful and arbitrary and capricious rule would undermine the public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Tex. v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (quoting *Wash. v. Reno*, 35 F.3d 1093, 1102 (6th Cir. 1994)). Given these interests, as well as the lopsided harm that falls on Plaintiff States if portions of the Final Rule go into effect, this Court should maintain the status quo and reject Defendants' motion.

## Conclusion

For the reasons articulated above, as well as the reasons set forth in its July 3, 2024 Order, this Court should deny Defendant's Motion to Reconsider Grant of Motion for Stay of Agency Action.

Dated: August 5, 2024

.

Respectfully Submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RYAN D. WALTERS**
Chief, Special Litigation Division

*/s/Kathleen T. Hunker*
**KATHLEEN T. HUNKER**
Special Counsel
Texas Bar No. 24118415

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100
Fax: 512-457-4410
Kathleen.Hunker@oag.texas.gov

**COUNSEL FOR STATE OF TEXAS**

**AUSTIN KNUDSEN**
Attorney General of Montana

**CHRISTIAN B. CORRIGAN**
*Solicitor General*

**PETER M. TORSTENSEN, JR.**
*Deputy Solicitor General*

Montana Department of Justice
215 N. Sanders Helena, MT 59601
Christian.Corrigan@mt.gov
Peter.Torstensen@mt.gov

**COUNSEL FOR STATE OF MONTANA**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 5, 2024 and that all counsel of record were served by CM/ECF.

*/s/ Kathleen T. Hunker*
Kathleen T. Hunker